# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SERENA O'NEAL, on behalf of J.P., ) | |
| ) | No. 14 C 7286 |
| Claimant, ) | |
| ) | Magistrate Judge Jeffrey T. Gilbert |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Serena O'Neal ("O'Neal"), on behalf of her minor child J.P. ("Claimant"), seeks review of the final decision of Respondent Carolyn W. Colvin, the Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 10.] Claimant filed a Motion for Summary Reversal or Remand, and the Commissioner filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. [ECF Nos. 18, 25.] For the reasons set forth herein, Claimant's Motion is granted, and the Commissioner's Motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On November 18, 2009, O'Neal filed an SSI application on behalf of Claimant, alleging a disability onset date of September 30, 2009, due to learning disabilities and Attention-Deficit/Hyperactivity Disorder ("ADHD"). (R. 163-65, 187-94.) After an initial denial on June 8, 2010,

and a denial on reconsideration on August 13, 2010, O'Neal filed a request for an administrative hearing before an Administrative Law Judge ("ALJ") on October 6, 2010. (R. 114-15, 126.) O'Neal and Claimant, represented by counsel, appeared and testified at the hearing, which took place on March 6, 2012. (R. 55-113.) A Vocational Expert ("the VE") also was present and testified. (*Id.*)

On April 11, 2012, the ALJ issued a written decision denying Claimant's application for SSI and found that he was not disabled under the Act. (R. 30-48.) As an initial matter, the ALJ first noted that Claimant was a child of school-age at the time of the application. (R. 36.) The ALJ's opinion then followed the three-step sequential evaluation process for a SSI Disabled Child application, as required by Social Security Regulations. *See* 20 C.F.R. § 416.924.

At step one, the ALJ found Claimant had not engaged in Substantial Gainful Activity ("SGA") since his application date of November 18, 2009. (R. 36.) At step two, the ALJ found Claimant had the severe impairments of ADHD and organic mental disorder. (*Id.*) At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

In making his determination, the ALJ evaluated the requisite six domains of Claimant's functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. (R. 41-48.) The ALJ determined that Claimant did not have any limitations in the domain of health and physical well-being. (R. 47-48.) In the remaining five domains, the ALJ found that Claimant had less than a marked limitation. (R. 43-

47.) Based upon his findings, the ALJ concluded that Claimant has not been disabled since the date of application. (R. 48.)

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). The reviewing court may enter a judgment

"affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. ANALYSIS

A child is disabled within the meaning of the Act if he has a "physical or mental impairment, which results in marked and severe functional limitations, and ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Whether a child meets this definition is determined by a three-step inquiry. *See* 20 C.F.R. § 416.924(a); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486–87 (7th Cir. 2007). First, if the child is engaged in SGA, his claim will be denied. *See Giles ex rel. Giles*, 483 F.3d at 486. Second, if he does not have a medically severe impairment or combination of impairments, his claim will be denied. *Id.* Third, the child's claim will be denied unless his impairment meets, or is medically or functionally equivalent to, one of the listings of impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See Giles*, 483 F.3d at 486–87; 20 C.F.R. § 416.902; *see also Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

To determine if a claimant's impairments are functionally equivalent to a listing, an ALJ analyzes the severity of the impairment in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1); *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). To functionally equal a listing, the ALJ must find an "extreme" limitation in one domain or a "marked" limitation in two domains. *See* 20 C.F.R. § 416.926a(a). A "marked" limitation exists when the impairment seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when

4

the impairment very seriously interferes with [his] ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(I); *Hopgood ex rel. L.G.*, 578 F.3d 696 at 699.

In this case, Claimant's mother raises several issues for review. First, O'Neal argues that the ALJ erred in his functional equivalency analysis because he failed to consider all of the relevant evidence which showed the breadth of Claimant's limitations. (Pl. Mot. at 6-10.) Specifically, O'Neal argues that the ALJ failed to consider Claimant's limitations across the six domains. O'Neal further argues that the ALJ's credibility finding was unsupported by substantial evidence. (*Id.* at 10-11.) O'Neal then argues that the ALJ improperly rejected the opinion of Claimant's elementary school teacher. (R. 11-12.) Finally, O'Neal contends that the ALJ erred in ignoring Claimant's Individualized Education Program ("IEP"). (R. 12-15.)

## A. Functional Equivalency Analysis

O'Neal first argues that the ALJ did not consider all of the relevant evidence in his discussion of the six domains in determining functional equivalency. In evaluating a child's functioning, the ALJ must take into account the "whole child," measured by the child's activities as performed "at home, at school, and in the community." *See* SSR 09-1P (S.S.A.), 2009 WL 396031. In that evaluation, an ALJ should consider, among other things, whether the "child's medically determinable impairment(s) account for limitations in the child's activities" and to what degree the child's impairments "account for limitations in the child's activities." *See* SSR 09-1p * 3; *Nelson on behalf of S.N. v. Colvin*, 2015 WL 1806042, at *4 (N.D. Ill. Apr. 16, 2015). The question here is whether the ALJ properly considered the domain of: (1) moving about and manipulating objects; (2) attending and completing tasks; and (3) acquiring and using information. (Pl. Mot. at 6-9.)

5

## 1. Domain of Moving About and Manipulating Objects

First, the domain of moving about and manipulating objects considers how well a child is able to move h[is] body from one place to another and how a child moves and manipulates objects. *Brown v. Colvin*, 2015 WL 4576737, at *10 (N.D. Ill. July 29, 2015) *citing* 20 C.F.R. § 416.926a(j). A school-age child like Claimant should be able to "do things like use many kitchen and household tools independently, use scissors, and write." *Id.* A school-age child should also move at an efficient pace at school, at home, and within the neighborhood. 20 C.F.R. § 416.926a(j)(2)(iv).

The ALJ determined that Claimant had a less than marked limitation in this domain and stated that Claimant's IEP progress notes reflect his difficulties with fine motor coordination, specifically his problems using a pencil, but that no treatment provider indicated more significant limitation of Claimant's age-appropriate functioning. (R. 46.) But, as O'Neal points out, Claimant sat for Visual Motor Integration ("VMI") exams on November 5, 2009, and on October 9, 2012. (R. 229, 509.) In both instances, Claimant scored in the "very low" range and in the November 5, 2009 exam, Claimant's score placed him in the standard deviation of 15. (R. 514.)

Under agency regulations, a standard deviation of that range places an individual child in the "marked" category. *See* 20 C.F.R. § 416.926a ("If you are a child of any age (birth to the attainment of age 18), we will find that you have a 'marked' limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.") The Commissioner attempts to temper the ALJ's failure to discuss Claimant's 2009 VMI examination, by arguing that the first exam was performed right after he was diagnosed

6

with ADHD and that his exam results in 2012 were significantly less than two standard deviations. (Def. Mot. at 3.)

The Court is not persuaded that the 2009 exam should be any less significant simply because it was administered right after Claimant's ADHD diagnosis, and the Commissioner does not further elaborate as to why that should be so. And while the standard deviation of the 2012 exam may not have placed Claimant in the "marked" category, the Court is concerned with the ALJ's total lack of explanation and analysis of this pertinent evidence. The ALJ simply referenced several exhibits and concluded that his finding in this domain was consistent with the opinions of medical and mental health experts that examined Claimant or reviewed his file. (R. 46.)

Without further guidance as to the specific evidence upon which the ALJ relied, and because of the deficient analysis of the exam scores, the Court is not persuaded the ALJ's conclusion is supported by substantial evidence. While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Most importantly, an ALJ must build an accurate and logical bridge from the evidence to his conclusion. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998). The ALJ failed to do so here.

**2. Domain of Attending and Completing Tasks**

The domain of attending and completing tasks refers to how well the child is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h). A school-age child like Claimant should be able to focus attention in a variety of situations in order to follow directions, remember and organize school

materials, and complete classroom and homework assignments. *Id.* A child is expected to be able to concentrate on details and not make careless mistakes in [his] work, change activities or routines without distracting [one]self or others, and stay on task and in place when appropriate. *Id.* The child should be able to sustain attention well enough to participate in group sports, read, and complete family chores. *Id.* The child should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id.*

Here, the ALJ determined that Claimant had less than marked limitations in this domain and reasoned that though he was diagnosed with ADHD in early November 2009, his mother repeatedly advised treating physicians that Claimant's concentration and attention improved with prescribed Concerta, a medication for treatment of ADHD. (R. 44.) O'Neal argues that the ALJ did not consider evidence tending to show Claimant's difficulty in this domain, such as reports from treating physician Dr. Tayyab who had to adjust Claimant's medicine dosage on several occasions due to impulsive and aggressive behavior at school. (R. 546-48.) Dr. Tayyab's notes also indicate severe behavioral problems at school which he attributed to inattention and frustration. (R. 548.)

The Court finds Claimant's arguments relating to this domain to be persuasive. Despite the Commissioner's argument that such reports do not conclusively establish "marked" or "extreme" limitations, the ALJ did not address the reports with any specificity. Moreover, while the ALJ determined that Claimant's behavior was controlled with his medication, there is some evidence in the record that shows Claimant still had problems with his behavior while on his medication. Claimant's mother testified at the hearing that she gave Claimant medication on a consistent basis but not on the weekends because she was trying to stretch her supply for his days

8

at school. (R. 80.) But while Claimant remained compliant with his medication during his days at school, medical evaluations suggest that he continued to display symptoms of ADHD.

A case study evaluation performed at Zion Elementary in September and October 2012 largely corroborated Dr. Tayyab's findings. (R. 255-58.) On several occasions, teachers observed Claimant's behavior and noted his inattention and inability to follow the class without redirection. (R. 257.) Claimant displayed difficulty even with redirection and often lost focus. (*Id.*) He did not engage in group activities with other students and often distracted them with his inattention by talking with them. (*Id.*) The total failure of the ALJ to discuss this evidence gives the Court pause in accepting his conclusion. *See* 42 U.S.C. § 405(g); *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (An ALJ must support his decision with substantial evidence.)

### 3. Domain of Acquiring and Using Information

The domain of acquiring and using information refers to how well a child acquires or learns information and how well he uses the information he has learned. *See* 20 C.F.R. § 416.926a(g). For school-age students who attend elementary and middle school, such as Claimant, the child should be able to learn to read, write, and do math, and discuss history and science. *Id.* The child should be able to use the skills in academic situations as well as in daily living situations at home and within the community (e.g., reading street signs, telling time, and making change). *Id.* The child should be able to use increasingly complex language to share information and ideas with individuals or groups, by asking questions and expressing [individual] ideas, and by understanding and responding to the opinions of others. *Id.*

The ALJ concluded that Claimant had a less than marked limitation in acquiring and using information. (R. 42.) The ALJ acknowledged that diagnostic testing demonstrated Claimant's intellectual functioning fell within the low average range but that the diagnostic

9

findings underestimate Claimant's true intellectual functioning due to interference from his ADHD symptoms during testing. (*Id.*) The ALJ's findings here are speculative and lack explanation because the ALJ assumes that without Claimant's ADHD, he would perform at an improved rate. The ALJ does not point to any medical evidence to support this finding, and he must base his determinations on the testimony and medical evidence on the record. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")

O'Neal and the Commissioner debate whether Claimant's intellectual functioning falls within the borderline range, and the Commissioner argues that Claimant mischaracterizes the report of state consultative psychologist Dr. Michael B. Leach. However, other evidence in the record supports a finding that Claimant's scores on certain subjects are at the bottom of the borderline range. (*See* R. 262.)

O'Neal also argues that the ALJ erred in not giving sufficient weight to the opinion of Claimant's teacher Ms. Henderson. In his decision, the ALJ gave little weight to Ms. Henderson's opinion as noted in a completed February 2012 questionnaire. (R. 40.) In the questionnaire, Ms. Henderson noted that Claimant had very serious problems in various activities, such as following instructions, reading comprehension, math, expressing ideas, and learning new materials. (R. 557.) She further noted that Claimant "has a lot of trouble reading and writing…his letters, numbers, and words are often reversed." (*Id.*)

The ALJ gave Ms. Henderson's opinion little weight because he found it unclear whether her indications of serious limitations are with or without Claimant's prescribed medication. (R. 40.) Once again, however, the ALJ did not point to any evidence to suggest that his speculation of non-compliance with medication was well-founded. To the contrary, Claimant's mother

10

testified at the hearing that she gives Claimant his medication consistently except for weekends. (R. 80.) If there was any reason or evidence for the ALJ to suspect that Claimant was not taking his medication, he did not reveal it. The ALJ did not explain sufficiently why he did not credit Ms. Henderson's opinion when evidence in the record seems to support her findings rather than contradict them. The Commissioner argues that it was reasonable for the ALJ to deny weight to Ms. Henderson because the regulations do not necessarily consider teachers as acceptable medical sources. Common sense, however, dictates that teachers and parents who observe a child's behavior may provide substantial evidence of a claimant's difficulties and limitations. *See* 20 C.F.R. § 416.913(e); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). The Court finds that the ALJ did not sufficiently explain his reasons for not giving any weight to Ms. Henderson's opinion.

**B. Claimant's IEP**

With regard to Claimant's IEP, O'Neal proffers two arguments. First, O'Neal argues that the ALJ erred because he failed to consider Claimant's November 2010 IEP in his analysis. (Pl. Mot. at 12-13.) In his written analysis, the ALJ acknowledges certain findings of the November 2010 IEP. In fact, the ALJ also acknowledged findings from the November 2012 IEP. For example, in his written decision, the ALJ noted that Claimant's IEP from 2011 through 2012 indicate that he "works hard, is usually cooperative, and able to get along with peers." (R. 40.) The IEP also noted that Claimant is "at the first grade level, or one grade behind, in mathematics, reading, and language arts. (R. 556.) The ALJ used these findings from the IEP to temper Claimant's mother's allegations that Claimant is educated in a "self-contained environment," as the IEP indicated that he is removed from non-disabled peers for less than 21 percent of the

school day. (R. 40, 556.) But in so finding, the ALJ dismissed an entire line of evidence that seems to indicate severe limitations.

An ALJ may not ignore an entire line of evidence that is contrary to his findings, *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999), rather he must articulate at some minimal level [his] analysis of the evidence to permit an informed review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). For example, a reasonable review of the IEP shows that Claimant was found to have a "very serious problem" in several areas and activities, such as understanding school and content vocabulary, reading comprehension, comprehending math, expressing ideas in written form, and learning new material. (R. 557.) The IEP also showed that Claimant's problems were not merely cognitive but rather involve other areas of functioning, such as carrying out instructions, organizing items, completing work accurately, working without distracting oneself, and working and playing with other children. (R. 558-59.) Claimant's instructor also noted in the IEP that he "tends to have fine motor problems, such as handwriting and drawing." (R. 559.) While the ALJ does not have to address every piece of evidence, these findings seem to indicate that Claimant does have certain limitations and functional impairments in school. The ALJ should have analyzed and explained these findings from the IEP also.

O'Neal next argues that the Appeals Council erred in rejecting Claimant's 2012 IEP record. (Pl. Mot. at 14-15.) Under 20 C.F.R. § 404.970(b), additional evidence submitted to the Appeals Council will be evaluated only if it is "new and material" and "relates to the period on or before the date of the [ALJ] hearing decision." *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015). If the newly submitted evidence satisfies these conditions, the Appeals Council shall incorporate that evidence into the administrative record and shall then evaluate that record, "including the new and material evidence." *Id.* Here, O'Neal argues that Claimant's IEP is

12

material because it supports a finding that Claimant had a marked limitation in the domains of interacting and relating with others and caring for oneself. (Pl. Mot. at 14.) O'Neal also argues that it relates back to the relevant time period because the 2012 IEP is based on an assessment of Claimant's progress through the end of his enrollment at Bose Elementary. (*Id.*) The Court agrees. As stated previously, the IEP seems to indicate that Claimant had more than moderate limitations in several areas of cognitive and social functioning. (R. 557-59.)

The Commissioner argues that the Appeals Council explicitly stated that it considered the additional evidence in its determination and correctly found that it lacked basis to change the ALJ's decision. (Def. Mot. at 10-11.) Indeed, the March 16, 2013 Notice of Appeals Council action contained the language "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of [AC]" and the AC Exhibit List included both the 2010 and 2012 IEP records for Claimant. (R. 22-25.) The Seventh Circuit, however, previously has held that such inclusion language, coupled with the listing of the new evidence in the Appeals Council Exhibit List, is insufficient to show that the Appeals Council actually considered this evidence. *See Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (where the Seventh Circuit rejected the contention that this language was sufficiently specific to confirm that the Council had accepted and reviewed the newly submitted evidence); *see also Stepp*, 795 F.3d 711 at 724-25 ("To us, this boilerplate language is little more informative than the similarly standardized language employed by the Council in *Farrell*, which explained that the 'information [submitted to the Appeals Council] d[id] not provide a basis for changing the [ALJ]'s decision.'").

The denial notice in *Stepp* and the AC denial notice in the instant case are similar in that neither notice references the relevant medical records in the body of the decision, specifically the

evidence presented in the IEP. Because of this ambiguity, it is impossible for the Court to determine whether the AC appropriately considered the IEP. As explained previously, the IEP hints at more than moderate limitations in Claimant's functioning and perhaps this evidence would have provided the AC with a basis for changing the ALJ's decision. However, because the AC determination included the standard boilerplate language without further explanation and without mention of the new evidence, the Court is not certain that the IEP was properly evaluated. Because of this lack of certainty, remand is warranted.

**C. Credibility Analysis**

Finally, O'Neal argues that the ALJ erred in his credibility determination. Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the Agency assesses the effects of a claimant's alleged symptoms: SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1. As SSR 16-3p is simply a clarification the Administration's interpretation of the existing law, rather than a change to it, it can be applied to Claimant's case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016).

Because the Court has concluded that remand is appropriate for the reasons discussed above, the Court does not have to address the specific issues regarding the ALJ's credibility determination. On remand, however, the ALJ should consider his credibility analysis as appropriate and conduct a symptoms evaluation pursuant to the new SSR 16-3p.

## IV. CONCLUSION

For the reasons set forth above, Claimant's Motion for Reversal or Remand [ECF No. 18] is granted. The Commissioner's Motion for Summary Judgment [ECF No. 25] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

                                                    Jeffrey T. Gilbert
                                                  United States Magistrate Judge

Dated: August 1, 2016